### O'CONNOR v. VIRGINIA PASSENGER & POWER CO. et al.

(Supreme Court, Special Term, Washington County. February, 1905.)

**1. COMPLAINT—DEMURRER—FACTS ADMITTED.**

By demurring to the complaint, defendants admit not only the allegations directly made, but all facts inferentially alleged.

[Ed. Note.—For cases in point, see vol. 39, Cent. Dig. Pleading, §§ 525–534.]

**2. CORPORATIONS—STOCKHOLDERS—DIVERSION OF STOCK—RETURN.**

Where defendants G., who were the owners of a majority of the stock of an underwriting corporation, which had contracted with the V. Company to finance $6,550,000 of the V. Company's bonds at 90 per cent. of their par value in consideration of $10,406,400 of the capital stock of the V. Company, by such transaction obtained over two-thirds of the V. Company's stock, and through the votes of dummy directors of both corporations thereafter obtained a cancellation of the financing contracts, by which defendants G. obtained such amount of the V. Company's capital without consideration, a minority stockholder of the latter was entitled to recover such stock in equity for the benefit of the corporation.

**3. SAME—SUIT BY CORPORATION—ADMISSION—NECESSITY—PLEADING.**

Where, in an action by a minority stockholder to recover stock wrongfully acquired by the individual defendants, the complaint alleged that such defendants owned a majority of the stock of the company, by which it controlled the company's business by electing subservient directors, and so used the same at the last annual meeting, the complaint fairly showed that such defendants were still in control of the business of the corporation, and that the directors were under their domination, so that no demand on the corporation to bring such suit was necessary before it could be maintained by plaintiff.

**4. SAME—PRIOR FRAUDULENT ACTS.**

Where, in a suit by a minority stockholder to recover stock wrongfully issued to the individual defendants, the complaint charged that plaintiff became the owner of his stock for value in the regular course of business, it was not material that some of the alleged wrongs were committed before plaintiff became a stockholder.

**5. ACTION—MISJOINDER OF CAUSES—OBJECTIONS—WAIVER.**

Where misjoinder of causes of action was fairly before the court at Special Term on a motion to compel plaintiff to separate and number the causes of action, and defendants did not appeal from an adverse ruling thereon, they were not entitled thereafter to raise such objection by demurrer.

Action by Thomas O'Connor against the Virginia Passenger & Power Company and others. On demurrer to the complaint. Overruled. See 92 N. Y. Supp. 161.

John L. Hill and Tuttle, Flint & Nichols, for plaintiff.

George W. Wickesham, Charles A. Gardiner, and Henry W. Anderson, for defendants.

JOHN M. KELLOGG, J. The plaintiff, a stockholder of the defendant the Virginia Passenger & Power Company, seeks to compel the other defendants to restore to said company certain of its stock and bonds which he claims were illegally appropriated without consideration, or for an inadequate consideration, and each defendant demurs to the complaint upon grounds of insufficiency, misjoinder of causes of action, and nonjoinder of the directors of said company. By demurring to the complaint the defendants admit not only the allegations directly made, but all the facts which are argumentatively or inferentially alleged, the pleading being liberally construed in favor of the pleader. Ellsworth v. Franklin County Ag. Society (Sup.) 91 N. Y. Supp. 1040. "The complaint will be deemed to be sufficient whenever the requisite allegations can be fairly gathered from all the averments, though the statement of them may be argumentative, and the pleading deficient in logical order and in technical language. The pleading will be held to state all facts that can be implied from the allegations by reasonable and fair intendment, and facts so impliedly averred are traversable in the same manner as though directly stated." Sage v. Culver, 147 N. Y. 241, 245, 41 N. E. 513.

The complaint, so construed, fairly shows that the Virginia Company authorized an increase of its $3,000,000 of capital stock to $15,-000,000, and the issue of $15,000,000 of mortgage bonds. Thereupon the Development Company bought or were to finance $6,550,000 of said bonds at 90 per cent. of the par value thereof, and in consideration of their agreement so to do it received from the Virginia Company $10,406,400 of the said capital stock of the latter. Thereafter the defendants Gould acquired all, or nearly all, of the stock of the Development Company, and acquired for no consideration, or no adequate consideration, a majority of the stock of the Virginia Company. As the Development Company, by virtue of the agreement mentioned, owned over two-thirds of the stock of the Virginia Company, the Goulds must have acquired in some way all or a great part of the stock which the Development Company received from the Virginia Company. There-

upon the defendants Gould, as the practical owners of the Development Company, which with them owned over two-thirds of the stock of the Virginia Company, fraudulently and collusively caused said contracts between said companies to be canceled, and the Development Company relieved of all obligations thereon, leaving the stock which had been turned over to the Development Company either in the hands of said company or in the hands of the Goulds, without any consideration; and said stock acquired by said Goulds without consideration is now held by them, and is used and voted to control the business and operations of the Virginia Company, and was so used and voted at the last annual meeting of such company, held in January, 1904, and adjourned to February, 1904, for the election of a board of directors of said company subservient to their dominion and dictation; and thereafter, at different times, the directors of said Virginia Company, acting collusively and fraudulently with and under the dictation and domination of the defendant Frank Jay Gould, delivered to the defendants Gould, or one of them, large blocks of said mortgage bonds, being all of the said mortgage bonds except $7,150,000 thereof expressly reserved by the terms of said mortgage for the payment of underlying bonds, at the greatly inadequate price of 25 per cent., the most of said bonds being bonds which the Development Company had agreed to pay 90 per cent. for, and for like bonds other persons and creditors had paid 90 per cent., which acts were in violation of the provisions of the mortgage as to some of the bonds, which were not to be sold for less than 90 per cent., and said bonds were sold for purposes and in a manner contrary to the provisions of said mortgage; and also in the same manner, and under the same dictation, other assets of said corporations were turned over to the defendant Frank Jay Gould without any consideration, and used by him as his private property; and that the company has been depleted by such disposition of its bonds and stock and other valuable assets by reason of such fraudulent and collusive acts, dominion, and dictation with and over the directors of said company.

If the individual defendants, by using stock not legally outstanding, elected their creatures as the directors of the Virginia Company, and then fraudulently and collusively controlled them so that the cancellation of the contracts and the misappropriation of the stock of the Virginia Company were affirmed and recognized, and the illegal disposition of the bonds and the conversion of the company's assets allowed, those acts became the acts of those defendants, and they are responsible for them. It goes without saying that where large blocks of stock are given away without consideration, where mortgage bonds which the directors cannot by the terms of the mortgage sell for less than 90 per cent., and then only for certain purposes, are practically given away in direct violation of the terms of the mortgage, and the assets of the company are turned over to individual uses without adequate consideration, the parties who do these illegal acts and deprive the company of its substance and value must be liable to some one, and, if the directors were the mere creatures of the individual defendants, then these illegal acts are the acts of the latter, and they are responsible for them. It will not do to say that the majority of the stock of the company have the absolute right to control the company, and are under no liability to the

minority stock, and therefore hold no position of trust to the company or to the minority stock. This may be true, assuming that they act in good faith, and are only making mistakes or using poor judgment; but when the majority stockholders act fraudulently and collusively, with the intent and in a manner which can only injure the company and the minority stockholders—when they appropriate for their own purposes the assets of the company without adequate consideration—then they may be held for the wrong done the minority, and required to make restitution to the company. "The law requires of the majority of the stockholders the utmost good faith in their control and management of the corporation as regards the minority, and in this respect the majority stand in much the same attitude towards the minority that the directors sustain towards all the stockholders. Thus, where the majority are interested in another corporation, and the two corporations have contracts between them, it is fraudulent for that majority to manage the affairs of the first corporation for the benefit of the second. A court of equity will intervene and protect the minority upon an application by the latter." Farmers' L. & T. Co. v. N. Y. & N. R. Co., 150 N. Y. 430, 44 N. E. 1043, 34 L. R. A. 76, 55 Am. St. Rep. 689. The individual defendants must restore to the company the property thus wrongfully acquired, either for the reason that they were in fact the directors, the nominal directors being their mere creatures and registering their will, or that they, as the owners of the majority of the stock, fraudulently caused the assets of the company to be turned from the company to their own private uses.

But it is urged that the cause of action, if any, belongs to the company, and that the plaintiff, a stockholder, cannot maintain this action without alleging a demand upon the directors to bring it, and their refusal; citing Flynn v. Brooklyn C. R. R. Co., 158 N. Y. 493, 53 N. E. 520. A well-known exception to the rule in the above case is found in Sage v. Culver, 147 N. Y. 241, 41 N. E. 513; Judge O'Brien saying for the court, at page 246, 147 N. Y., and page 513, 41 N. E.: "Where the corporation is exclusively under the control of the trustees and officers whose acts and management are questioned, a demand that the corporation bring the action would be idle and fruitless, and in such cases equity permits the stockholder to bring the action in his own name." A stockholder may maintain the action without demand "where the directors are the tools or the creatures, or under the control, of the shareholders or of third persons or corporations whose acts are complained of, and who are necessarily adverse to the litigation, or where the directors are under the control of the shareholder holding a majority of the stock, and the fraud which it is sought to redress has been instigated by this majority shareholder, and the minority shareholders are the parties bringing the action, where the object of the bill is to impeach an unlawful contract, and the directors are under the control of the persons with whom the contract was made." 10 Cyc. 979; Cook on Corporations (5th Ed.) § 741.

There is no direct allegation in so many words that the company is still controlled by the directors who did these illegal acts, but the complaint argumentatively and inferentially shows such to be the fact. The allegations that the defendants Gould still own the majority of the

stock, and that it is used and voted by them to control the business operations of the company by electing subservient directors, and was so used at the last annual meeting of February, 1904, fairly shows those defendants to be still in the control of the business of the company, and that the directors are still under their domination and control, and are the directors elected at the last meeting held for that purpose. It therefore appearing from the complaint that those defendants still control the company through their majority of stock and through the same directors, no demand upon the company was necessary before action brought, as it would simply be a useless formula to ask the individual defendants to sue themselves.

It is urged that the plaintiff became an owner of the stock after some of the alleged wrongs had been committed, and that a court of equity will grant him no relief for wrongs committed before he became a stockholder. It is alleged and admitted that he became the owner of the stock for value in the regular course of business. A court of equity will therefore grant him relief. It is only in cases where the party has bought the stock for the mere purpose of bringing an action— where he is a mere interloper seeking for trouble—that a court of equity refuses to grant him relief. Sayles v. Central Nat. Bk. of Rome, 18 Misc. Rep. 155, 41 N. Y. Supp. 1063. While that case was reversed upon other points in 18 App. Div. 590, 46 N. Y. Supp. 194, the decision of Judge Hiscock at Special Term is a correct statement of the law upon this question.

So far as the demurrer relates to the misjoinder of causes of action, that question was fairly before the court at Special Term upon a motion to compel the plaintiff to separate and number the causes of action; the Special Term holding that the gist of the action was not the conversion or fraudulent appropriation by the individual defendants of the property, but the wrongful collusion between them and the directors, the numerous transfers being alleged simply as proof of the injury resulting from the wrong which constituted the ground of the action, and that, while the complaint might be indefinite and uncertain in some respects, the remedy to cure it was by a different motion. No appeal was had from that order, and, if the defendants desired further to contest that matter, they have lost their opportunity by not appealing. It is true that the Special Term intimated that plaintiff could not maintain the action without a previous demand upon the company to bring it, and suggested the propriety of testing that question by demurrer. But it was no part of the decision. That question was not before the court. The motion to separate different causes of action fairly assumes that some cause of action is stated. It is true that the prayer for relief refers to some relief against the directors, but, as they are not parties, that prayer is without effect. Their presence before the court is unnecessary. They took nothing for themselves, only allowing their masters to help themselves to the assets of the company. From the admission of the pleadings the individual defendants have the property which has been misapplied, they caused the misapplication, and the court may properly deal with the principals, leaving the instruments they used in the commission of the wrong out of the case, as the proper

relief can be obtained by proceeding with the parties now before the court.

The demurrer is overruled, with $35 costs, with leave, upon payment of said costs, to withdraw the demurrer and answer. Interlocutory judgment may enter accordingly.