Unusual and irregular habits known as eccentricities do not incapacitate one from making a will. Redf. on Wills, 71; Schouler on Wills (2d ed.), § 144; Brick v. Brick, 66 N. Y. 144.

From a careful consideration of all the evidence, I am firmly of the opinion that the will ought to be admitted to probate, its provisions are apparently reasonable and to some extent in conformity with testator's previously expressed intent. While the will discriminates to some extent in favor of the oldest sons of the testator such discrimination does not seem to be entirely without reason.

A decree will be made admitting the will to probate and granting letters thereon to the executor named in the will.

Decreed accordingly.

---

JOSEPH I. SAYLES, Plaintiff, *v.* CENTRAL NATIONAL BANK OF ROME, et al., Defendants.

(Supreme Court, Oneida Special Term, September, 1896.)

**1. Banks — Tortious acts of directors.**

> The right of a stockholder in a banking corporation to attack alleged tortious acts of its directors which were committed before he became the owner of any of the stock, is not to be questioned unless it appears that the stockholder purchased his stock merely for the purpose of attacking the tortious acts. Hence it follows that such a stockholder, suing not only in his own right, but in that of all other stockholders similarly situated, may allege and prove tortious acts of the directors which, upon the face of the complaint, appear to have been committed, in part at least, before he became a stockholder.

**2. Equity — Joinder of causes of action.**

> Such an action is properly brought in equity alone; and with a view to prevent multiplicity of actions the plaintiff, under allegations charging a series of wrongful acts extending over a number of years during which the personnel of the directors changed, may join in the action all of the directors who have been such at various times during the period of the wrongful acts; and the plaintiff is not bound to bring a separate action against each set of directors by which to attack the wrongful acts which were committed in their time.

Supreme Court, September, 1896,                [Vol. 18.

**3. Same — Parties.**

    Where the complaint in such an action alleges the death of one of the directors charged with improper conduct in the management of the bank, it is proper for the plaintiff to make his executrix a party defendant.

THIS action is brought by plaintiff as stockholder in and of said Central National Bank of Rome in behalf of himself and such other stockholders as may elect to properly unite with him in the action to secure money relief for damages claimed to have resulted to said Central National Bank and the stockholders thereof through the alleged improper acts and omissions to act of the individual defendants and one Henry Johnson, deceased, and repre-sented herein by his executrix, as directors of said bank. The result of such alleged improper conduct upon the part of said directors is claimed to have been that plaintiff's forty-five shares of the capital stock of said bank of the par value of $60 per share, not only became valueless, but have subjected him to a personal assess-ment for the benefit of the creditors of said bank to the full amount of said stock. Said individual defendants were not all directors at the same time, but from time to time, between the year 1889, when the alleged misconduct is claimed to have commenced, and the year 1894, when said bank went into the hands of said defendant Stevens as receiver.

It is alleged, not only that the defendant Stevens, as such re-ceiver, has refused to bring this action in behalf of said bank and plaintiff and its stockholders, but that on account of his relations as a director to the alleged misconduct complained of and to the other defendant directors he is not qualified to properly conduct the same.

Several separate demurrers have been served in behalf of various of the defendants respectively. These demurrers all urge three general grounds of objection to the complaint, special considera-tions being urged in behalf of one or two defendants because of particular circumstances applicable to them and which will here-after be specially considered. These three general grounds are:

    1. That this court has not jurisdiction of the subject of the action.

    2. That the complaint does not state facts sufficient to constitute a cause of action.

    3. That causes of action have been improperly united in said complaint, the general basis of this ground of demurrer being, as

hereinbefore stated, that all of said defendant directors were not such at the same time; and that it is improper to seek to recover in one action relief for acts to which all of the defendants were not parties.

Searle & Sayles, for plaintiff.

J. S. Baker, for defendants Parry et al.

E. L. Stevens, for defendants Roth et al.

Prescott & Titus, for defendant Schofield, executrix, etc.

Thomas S. Jones, for defendant Etheridge.

H. S. Bedell, for defendants Central National Bank of Rome and Jim Stevens, individually, and as receiver.

Hiscock, J.    The first ground of demurrer above stated, namely, that this court has not jurisdiction of this action, has not been urged either upon the oral argument or by the briefs submitted, and it seems to be too well settled that it has jurisdiction of such an action as this to require discussion or even citation of authorities.

Neither has the fault suggested by said second ground of demurrer that the complaint herein does not state a cause of action been at all seriously urged except as above stated in the case of one or two of the defendants whose special claims will be considered later.    In the absence of any argument upon the sufficiency of the complaint the only question which has suggested itself is that arising upon the allegations of ownership of stock by plaintiff as to his right to maintain this action for the alleged wrongful acts during the whole period complained of.    Said acts complained of are said to have taken place during the period between 1889, and December, 1894, when, as stated in the complaint, the bank was insolvent, and went into the hands of the defendant Stevens as receiver.    The complaint then alleges (fol. 2) that plaintiff " at the time of said insolvency and suspension of said bank was and still is " the owner and holder of forty-five shares of the capital stock of said bank.    There is no other specific allegation as to when he acquired ownership of said stock although the allegations at folio 27 would seem to suggest that he occupied the position of stockholder during the whole period covered by his complaint.    There is, at

least, no allegation which combats such idea. It seems to be settled that under such circumstances he has a right to cover by his action any acts committed during the whole period referred to in his complaint. Nash v. Hall Signal Co., 90 Hun, 354, 359.

This view seems to have been adopted even where it expressly appeared that the stock of the complainant had been acquired after commission of the acts complained of. Young v. Drake, 8 Hun, 61; Frothingham v. Broadway, etc., R. R. Co., 9 Civ. Pro. 304. See, also, as to rights carried by acquisition of stock, Boardman v. Lake Shore, etc., R. R. Co., 84 N. Y. 157, 176, 177.

The right to question prior acts under an after-acquired holding of stock in a corporation, seems to be questioned only in a case where the stock has been bought simply for such purpose. Kingman v. R., W. & O. R. R. Co., 30 Hun, 73.

The ground of demurrer which has been strenuously urged, and which presents, as it seems to me, the important questions in this case, is the one lastly stated, viz., that there is an improper joinder of causes of action, the individual defendants having been directors at different times and not all of them having been such during all of the time when the acts complained of and for which relief is sought occurred. It is strenuously urged that a cause of action against A. and B., for injury claimed to have resulted from their wrongful acts as directors, cannot be united in the same complaint with one against B. and C. for similar injury resulting from their wrongful acts as directors in another year.

The consideration of the question thus presented makes proper a more extended examination of the allegations of the complaint upon this subject.

As above stated, the action is brought by plaintiff in his own behalf and also in behalf of other stockholders who may elect to unite with him. It is brought by him because, as claimed, the receiver of the bank has not only refused to bring it but also because of his relationship to the subject of the action and to the other defendants it would not be proper for him to bring it. The complaint sets forth the periods from 1889 down to the closing of the bank in 1894, when the defendants were respectively directors thereof. It refers to and sets forth the obligations which they undertook and assumed as such directors, and it then charges, in substance, amongst other things, as the basis of the complaint against defendants, that during the whole period hereinbefore referred to (1889-1894), one Bielby was cashier of said Central

National Bank of Rome; that he engaged in stock speculations, etc.; that he and "said defendants or other employees of said bank * * * either severally or in collusion with said Bielby" abstracted and misappropriated large funds and assets of the bank; that incidental to such abstraction and as a means thereof said Bielby employed various improper methods by which to get and withdraw the funds of said bank. It then alleges, in one or more places, that said defendants knew and concealed said improper acts of said Bielby and appointing him cashier each year, knowing him to be untrustworthy, and uniting with him in making reports of the bank untrue and incorrect, for the purpose of concealing his peculations; in other places it alleges that said defendants ought to have known of said Bielby's peculations, and were negligent in not discovering the same, and in not knowing and ascertaining the true condition of the bank. It is also complained that said defendants allowed various persons to become indebted to said bank in excess of the amount allowed by law; that they improperly appointed said Bielby as cashier, from year to year, and other persons as employees in said bank without requiring proper bonds and security from them for the faithful and honest performance of their duties; that they allowed improper loans of the funds of said bank to be made to said Bielby and otherwise; and finally that by reason of their misconduct and negligent omissions defendants caused said bank to lose and be damaged more than $240,000, whereby plaintiff has suffered damage to more than $5,520, and been subjected to a loss equal to double the amount of the par value of his shares, and the other shareholders in said bank have been subjected to similar loss.

Judgment is demanded as follows: "That this court decree that the defendants, who were directors as aforesaid, are individually, and that defendant who is executrix of the will of Henry Johnson is, as such executrix, responsible to the plaintiff for all losses resulting to the plaintiff as such shareholder from the directors' negligence and misconduct in office as aforesaid, and that an account be taken of the damages suffered by the plaintiff, and by the other shareholders of said banking association who may in due time join in this suit, by reason of the said negligence and misconduct in office, and that the several plaintiffs have judgment against the defendants who were directors as aforesaid, and against said executrix as such, for the respective amounts in which upon such accounting they shall appear to have respectively suffered damage, in all re-

spects aforesaid, and that such other relief in the premises as may be just be granted, etc."

This action, by necessity from its very nature, is one in equity. A stockholder seeking relief through a corporation for the benefit of it and of its stockholders for injury caused by the improper conduct of its directors, must bring his action in equity and an attempt to do otherwise will defeat the action. Greaves v. Gouge, 69 N. Y. 154; Brinckerhoff v. Bostwick, 105 id. 567.

It is based upon the obligations which the individual defendants assumed by becoming directors of the bank, which obligations were those of trustees toward plaintiff and the other stockholders. Empire State Savings Bank v. Beard, 81 Hun, 184, 192; Brinckerhoff v. Bostwick, 99 N. Y. 193.

Although plaintiff, if he should succeed, might not become entitled to judgment in precisely the form prayed for by his complaint, his complaint is framed about upon the same lines as those in the cases next hereinafter stated, and his action is to be deemed in effect as brought for the purpose of having ascertained the damages which it is claimed the bank and its stockholders have sustained by reason of the alleged wrongful conduct of the defendants, and to have said defendants as trustees account for their conduct as such. Brinckerhoff v. Bostwick, 88 N. Y. 52, 58, 59; 105 id. 567, 570; Empire State Savings Bank v. Beard, *supra.*

The question presented by the ground of demurrer now being considered may, therefore, be further stated in the modified form:

Can a stockholder, seeking to have ascertained and discovered the damages suffered by a corporation through a series of improper acts upon the part of its directors, extending over several years, and to make said directors account for their said conduct, join in one action all of the persons who have been trustees during said period even though at different times, and have determined by one judgment the rights of all, or must he bring a separate action for every set of directors, bringing as many actions as there are different combinations of directors, with reference to the acts complained of?

It seems to me that the proposition contained in the first alternative may be answered in the affirmative and that a plaintiff may unite in one action directors of different portions of the period under investigation, and have determined by one judgment their rights and accountability.

This would seem to be in accordance with those general principles by virtue of which courts of equity will endeavor to so take juris-

diction of all the parties to a controversy as to properly and completely settle their different rights and avoid a multiplicity of suits.

Mere multiplicity of actions would not be the only embarrassment resulting from the procedure contended for by defendants. Plaintiff seeks to hold defendants accountable for what are alleged to have been a continuous and connected series of acts extending through several years and resulting in harm to the bank and its stockholders. The judgment in any one suit would, of course, in no way determine the rights or responsibilities of any director not a party thereto. It would be perfectly natural that defendants in one suit should attempt to avoid responsibility — if necessary, by shifting it upon some other director, who in turn would feel quite justified in meeting demands upon him by a similar and reciprocal defense. Not only would plaintiff be embarrassed in the pursuit of his rights, if he has any, by this separation and division into many distinct parts of the inquiry into defendants' discharge of their duties, but defendants themselves, if there is responsibility, could not expect to obtain such complete justice amongst themselves by such a course as by one judgment completely determining and properly apportioning the liability of all. A court of equity will not be prevented by too close adherence to precedents from taking jurisdiction of an action like this when necessary to secure complete and equal justice between a large number of parties.

Board of Supervisors of Saratoga County v. Deyoe, 77 N. Y. 219, was a case where a county treasurer, under authority to issue notes for the sum of $20,800.40, had issued seventy-three notes to the amount of $138,631, which were held by many different persons. Said notes were valid and legal to the extent of the amount first mentioned. Many different holders had brought suits on their notes, and plaintiff was unable to ascertain who were the rightful owners of the debt owing by the county or how much thereof was due to either of the defendants, and a separate litigation with each defendant would subject plaintiff to great expense. Upon demurrer to the complaint it was held that upon the facts stated a case was made entitling the plaintiff upon equitable principles to implead the holders of the notes for the purpose of having their respective rights and the liability of the county determined in one action; that the claims were of the same general character and the action was maintainable for the purpose of preventing a multiplicity of suits.

In writing the opinion in favor of this position, Judge Andrews says: "It does not require any argument to show that convenience, and the ends of justice will be subserved by an investigation and determination of the whole controversy in a single action, wherein the extent of the county's liability, and the persons in favor of whom such liability exists may be settled and adjudged. In such an action it will be to the interest of each claimant to present the facts in support of his own claim, and to resist the claims of others. The material facts will in this way be brought to light and a decision reached upon a view of all the material circumstances. I am of opinion that facts stated in the complaint disclose a case for equitable interference to restrain the prosecution of separate actions, and to have the rights of the parties determined in a single suit. It may be true as claimed that there is no exact precedent to be found in the books, but the case is itself anomalous. * * * The prevention of a multiplicity of suits as said by Chancellor Kent, in Brinkerhoff v. Brown, 6 Johns. Ch. 151, is a very favorite object with a court of equity, and the number of parties and the multiplicity of actual or threatened suits will as stated by Comstock, J., in the case of New York & N. H. R. R. Co. v. Schuyler, 17 N. Y. 608, sometimes justify a resort to a court of equity, when the subject is not at all of an equitable character and there is no other element of equity jurisdiction. It is upon this ground that bills of peace are entertained, viz.: to quiet unnecessary litigation. Story's Eq. Jur., § 854; Mitford's Eq. Pl. 145. The maintenance of this action will subserve this purpose. It will also protect the plaintiff against the hazard of a double recovery, which is the ground upon which bills of interpleader are sustained. Badeau v. Rogers, 2 Paige, 209; Bedell v. Hoffman, id. 199; 2 Daniels' Ch. 1562. The case presents the elements which justify the interposition of a court of equity. It may not be a case of interpleader strictly, or which meets all the definitions of a bill of peace, nor a case which could be maintained solely as one for the cancellation of written instruments, but it combines, to a greater or less extent, elements of jurisdiction in each of these cases, and the action, we think, may be sustained without a violation of principle, and without interfering with the substantial rights of the defendants."

Moreover, I believe that the weight of authority upon the specific question involved here is in favor of plaintiff's contention.

It was directly involved under the allegations of the complaint and the demurrer thereto upon the ground that causes of action had been improperly united, and so passed upon in the case of Empire State Savings Bank v. Beard, already cited.

The same question was also involved in the case of O'Brien v. Fitzgerald, 61 N. Y. St. Repr. 472 (Reference being made in the opinion in this case to that in the case of O'Brien v. Kursheedt, 61 N. Y. St. Repr. 470, where similar facts were involved.) As stated in the opinion in that case, it was conceded that if that action was to be treated as one at law, then causes of action against various directors had been improperly joined, but on the other hand it was equally assumed that if the action was one in equity it could be maintained upon the complaint as framed. The court, at General Term, held it was of the latter nature and overruled the demurrer. It is true that this decision was reversed in O'Brien v. Fitzgerald, 143 N. Y. 377, but this reversal was placed expressly upon the ground that the General Term had mistaken the character of the action, and that it was legal instead of equitable, and there was no infringement anywhere upon the assumption that if it had been equitable the complaint was entitled to be sustained.

In the case of Brinckerhoff v. Bostwick, as reported the last time, 105 N. Y. 567, it does not appear that this precise question was before the court, and yet Judge Peckham, in his opinion, at page 571, assumes the possibility of a judgment settling the different rights of different defendants in the same action, as plaintiff insists can be done in the one at bar. Speaking of the impossibility of covering all of the different rights involved in the case then before the court by the verdict of a jury, he says: "Under the allegations of the complaint and upon the very numerous bases of liability respecting the several defendants, it is hard to see exactly what kind of a verdict could be directed * * * which should cover the whole case and upon which judgment should be entered. The verdict might be for different sums against different defendants, and *founded upon distinct liabilities growing out of different acts as to each.*"

Some of the defendants, in urging this ground of demurrer, have pointed to allegations in certain portions of the complaint which they claim especially set out causes of action affecting only part of the defendants and thereby accentuate the claim now being made of multiplicity of causes of action. Under the views above expressed, if correct, it would probably be immaterial that those

allegations did so set out such separate causes of action, but I do not believe that such is the intention or effect thereof.

The allegations first so referred to, are those commencing with the words in the complaint as originally framed, "that said Armstrong," in line 4 of folio 7, and ending with folio 11, and which allegations upon a motion were subsequently somewhat modified. These allegations, whether in the original or the modified form, following as they do those relating to the refusal of the defendant receiver to bring this action and to his relations with the acts complained of, would seem to have been placed in the complaint for the purpose of showing that said receiver was not the proper person to bring this action and not, under any possible construction, to set forth a distinct cause of complaint to be enforced in this action.

So the allegations at folio 19, etc., that said Stevens had knowledge of the employment by the defaulting cashier of the funds of the bank, in his speculations, coupled with the allegation at folio 21, that "said defendants and said Stevens *concealed* (thereby implying knowledge of) the fact that he (said Bielby) had been engaged in stock speculations," do not seem to more than state the alleged connection of the defendant Stevens with the same acts in which it is claimed the other defendants participated.

As hereinbefore stated, it is claimed in behalf of two defendants that there are special considerations in favor of sustaining the demurrers interposed in their behalf. Henry Johnson, who was one of the directors during part of the period under investigation, died May 17, 1892, and his executrix is joined as a defendant. It is claimed that this is improper. If, however, the opinions hereinbefore expressed are correct, it would have been proper to join said Johnson, if alive, although he had ceased to be a director at the date mentioned, by resignation instead of death. This being so, it seems to me proper to join as a party his executrix, as has been done.

It is claimed, in support of the demurrer interposed, by the defendant Parry, that there are nowhere in the complaint such allegations with reference to his having been a director in the bank, as are found with reference to the other defendants, and no allegations which set forth any cause of action against him. While, very likely, this is the result of inadvertence, I think the claim in behalf of this defendant is well founded, and that there are no proper allegations to connect him with the subject-matter of the suit.

In conformity with the foregoing views, formal decisions and in-

terlocutory judgment in the usual form, may be prepared overruling, with costs, the demurrers interposed in behalf of the various defendants, except defendant Parry, and sustaining that, with the usual leave to serve amended pleadings.

Ordered accordingly.