June, 1909.]   Just *v.* Idaho Canal etc. Co., Ltd.      639

Points Decided.

(June 4, 1909.)

## JAMES JUST et al., Respondents, v. IDAHO CANAL & IMPROVEMENT COMPANY, LTD., a Corporation, et al., Appellants.

[102 Pac. 381.]

Action of Minority Stockholders on Behalf of Corporation—Right of Transferee to Sue on Cause of Action Accruing Prior to Purchase of Stock—Conflict of Interest and Duty Among Officers—Powers of Court of Equity—Laches in Prosecution of Action—Parol Evidence to Contradict Minutes of Corporation —Instructions—Sufficiency of Evidence — Cross-examination of Witnesses.

1. A stockholder suing on behalf of his corporation which is unable or unwilling to bring suit, and pleading a good cause of action, may maintain the same, though he was not an owner of stock at the time the breach of duty was committed or the cause of action accrued, except in cases where it is shown that he purchased the stock with the purpose of bringing suit, or where his vendor was for some reason estopped from maintaining the action and the purchaser had notice of such bar.

2. Where two competing corporations enter into a contract, and before the same is fully performed and the debt thereby contracted is due, one of the corporations obtains control of the other and elects a board of directors, and thereafter the directors and officers of the one corporation refuse to pay the debt contracted, and the directors and officers of the other corporation refuse to prosecute an action for the collection of such debt and obligation, such a conflict of interest and duty arises among the directors and officers, aside from and independently of any fraudulent motive, that a court of equity is warranted in permitting the minority stockholders to maintain their action on the contract.

3. The doctrine of laches in the prosecution of an action, when the delay does not amount to a bar by any statute of limitations, does not apply where the relative position of the parties has not been materially changed since the time when the cause of action accrued, and the delay has worked no wrong or serious inconvenience to the adverse party, so that substantial justice can still be done between the parties.

4. Where the verity of the records of a corporation is attacked by minority stockholders, who deny that the transactions therein purporting to be recorded ever occurred, and they contend that the true minutes of a given meeting show the very contrary of

that shown by the official record, parol evidence is admissible to show what actually occurred at such meeting.

5. The instructions given in a particular case must all be read and viewed together, and if they are not in conflict with each other, and correctly state the law as far as they go, the circumstance that an isolated sentence or paragraph is obscure, incomplete or indefinite will not of itself constitute a ground of reversal.

6. A wide latitude should be allowed in the cross-examination of parties to the suit, but the action of the trial court in sustaining objections to immaterial questions is not prejudicial error.

7. Evidence in this case examined, and held sufficient to support the verdict.

8. A judgment will not be reversed where the evidence is conflicting and there is substantial evidence to support the verdict of the jury. (Citing sec. 4824, Rev. Codes.)

(Syllabus by the court.)

APPEAL from the District Court of the Sixth Judicial District, for Bingham County. Hon. J. M. Stevens, Judge.

Action by minority stockholders of the Taylor & Goshen Canal Company to collect a debt due their corporation from the Idaho Canal and Improvement Company, Ltd. Judgment for plaintiffs for use and benefit of Taylor & Goshen Company. Both defendant corporations appeal. *Affirmed.*

Standrod & Terrell, for Appellants.

In order for the complaint in this case to state a cause of action in favor of the plaintiffs as minority stockholders of the said corporation, it must allege, fully and accurately, the *ultra vires* acts, or the fraud complained of; that respondents and each of them were owners of the stock claimed by them respectively at the time of the fraudulent acts complained of; or that they thereafter received it by operation of law; and that the plaintiffs acquired such stock in good faith and not for vexatious purposes. (*Moore v. Silver etc. Co.*, 104 N. C. 534, 10 S. E. 679; *Hawes v. Oakland,* 104 U. S. 450, 26 L. ed. 827; *Dimpfel v. Ohio etc. R. Co.*, 110 U. S. 209, 3 Sup. Ct. 573, 28 L. ed. 121; *Taylor v. Holmes,* 127 U. S. 489, 8 Sup. Ct. 1192, 32 L. ed. 179; *Merchants'*

*etc. Planter Line v. Waganer,* 71 Ala. 581; *Shawhan v. Zinn,*
79 Ky. 300; *Bimber v. Calivada Co.,* 110 Fed. 58; *Home
Fire Ins. Co. v. Barber,* 67 Neb. 644, 108 Am. St. 716, 93 N.
W. 1024, 60 L. R. A. 927; *Ulmer v. Maine R. E. Co.,* 93 Me.
324, 45 Atl. 40; *United Electric Co. v. Electric Light Co.,* 68
Fed. 673; *Woods v. Corry Water Co.,* 44 Fed. 146; *Alexander v. Searcy,* 81 Ga. 536, 12 Am. St. 337, 8 S. E. 630; *Dunphy v. Travelers' etc. Assn.,* 146 Mass. 495, 16 N. E. 426.)

"Delay in the assertion of a right, unless satisfactorily
explained, even when it does not constitute a positive statutory bar, operates in equity as evidence of assent, acquiescence or waiver." (*Spidel v. Henrici,* 120 U. S. 377-387,
7 Sup. Ct. 610, 30 L. ed. 718, and authorities cited in opinion.)

While a minority of the stockholders of a corporation may
maintain a bill in equity on behalf of themselves and other
stockholders, for fraud, conspiracy, or acts *ultra vires* against
a corporation, its officers, and others who participated therein,
when the minority stockholders have been injured or damaged
by said acts, they must act promptly and not wait an unreasonable length of time. (*Boyce v. Montauk Co.,* 37 W.
Va. 73, 16 S. E. 501; *Alexander v. Searcy, supra; Dunphy
v. Travelers' etc. Assn., supra; Dimpfel v. Ohio etc. R. Co.,
supra; Allen v. Wilson,* 28 Fed. 677.)

"The minute-book of directors' meetings is the proper evidence to prove a corporate contract, or the authority of a
corporate agent to act or contract for it." (2 Cook on Corporations, sec. 714; *Torras v. Raeburn,* 108 Ga. 345, 33 S.
E. 989.)

"The rough notes of the meetings were as much secondary
evidence as the testimony of the witnesses, and if produced
would only have been admissible like any other secondary
fact as tending to show what took place." (*Boggs v. Lakeport Pk. Assn.,* 111 Cal. 354, 43 Pac. 1106; *Guadalupe etc.
Assn. v. West,* 76 Tex. 461, 13 S. W. 307; *Dennis v. Joslin
Mfg. Co.,* 19 R. I. 666, 61 Am. St. 805, 36 Atl. 129.)

"The books and records of a corporation are competent
evidence as against the corporation and members thereof who
had access to the books, to show the accounts of the corpora-

tion." (3 Ency. of Evidence, 655; *Hubbell v. Meigs,* 50 N.
Y. 480; *Booth v. Dexter S. F. Co.,* 118 Ala. 369, 24 So. 405.)
"The rule forbidding parol evidence to vary or contradict
a writing applies to the records of a corporation." (3 Ency.
of Evidence, 657; *Williams v. Ingell,* 21 Pick. (Mass.) 288;
*Davis Mill Co. v. Bennett,* 39 Mo. App. 460; *Gould v. Nor-
folk Lead Co.,* 9 Cush. (Mass.) 338, 57 Am. Dec. 50; *Den-
nis v. Joslin Mfg. Co.,* 19 R. I. 666, 61 Am. St. 805, 36 Atl.
129.)

Where a party to an action offers himself as a witness,
he may be subjected to a thorough and rigid cross-examina-
tion. (3 Ency. of Evidence, 902.) A stockholder cannot
control the discretion of the directors as to whether to bring
suit or not. (3 Cook on Corporations, sec. 750; *Dickerman
v. Northern T. Co.,* 176 U. S. 181, 20 Sup. Ct. 311, 44 L. ed.
423; *La Grange v. State Treasurer,* 24 Mich. 468.)

"In general, a corporation represents and binds the stock-
holders in bringing and defending suits which involve the
rights and obligations of the corporation, and binds them
as fully as in the making of contracts." (*Farnum v. Bal-
lard etc.,* 66 Mass. (12 Cush.) 507; *Oglesby v. Attrell,* 105
U. S. 605, 26 L. ed. 1186; *Came v. Brigham,* 39 Me. 35;
*Lane v. Inhabitants etc. Weymouth,* 10 Met. (51 Mass.) 462;
*Graham v. Boston etc. R. Co.,* 118 U. S. 161, 6 Sup. Ct. 1009,
30 L. ed. 196; *Graham v. Boston etc. Co.,* 14 Fed. 653.)

A. M. Bowen, for Respondents.

When one corporation refuses to sue on a corporate cause
of action, because of it being controlled by the debtor, it is
a fraud on the minority; it is a breach of trust on the part
of the board whose duties are to their own corporation and
not the debtor, and equity permits the minority stockholders
to sue. (Thompson Com. on Corp., sec. 4488; *Brewer v. Pro-
prietors of Boston Theater,* 104 Mass. 378; *Hawes v. Oak-
land,* 104 U. S. 450, 26 L. ed. 827; *De Neuville v. New York
etc. R. Co.,* 81 Fed. 11, 26 C. C. A. 306; *Barnes v. Korne-
gay,* 62 Fed. 671; *Morrill v. Little Falls Mfg. Co.,* 46 Minn.
260, 48 N. W. 1124; *Fitzgerald v. Fitzgerald Con. Co.,* 41

Neb. 374, 59 N. W. 838; *Carpenter v. Roberts,* 56 How. Pr. 216; *Brinkerhoff v. Bostwick,* 88 N. Y. 52; *O'Conners v. Passenger Co.,* 46 Misc. Rep. 530, 92 N. Y. Supp. 525; *Bloom v. National etc. Savings Co.,* 81 Hun, 120, 30 N. Y. Supp. 700; *Pittsburg etc. Ry. Co. v. Dodd,* 115 Ky. 176, 72 S. W. 822; *Barr v. New York etc. Ry. Co.,* 96 N. Y. 444; *Rogers v. Lafayette Agr. Works,* 52 Ind. 297; *Burnes v. City of Atchison,* 48 Kan. 507, 29 Pac. 579; *Fletcher v. Alpena etc. Judge,* 136 Mich. 511, 99 N. W. 748; *Decatur Land Co. v. Palm,* 113 Ala. 531, 59 Am. St. 140, 21 So. 315; *Wickersham v. Crittenden,* 106 Cal. 329, 39 Pac. 603; *Beach v. Cooper,* 72 Cal. 99, 13 Pac. 161; *People's Sav. Bank v. Colorado etc. Bldg.,* 8 Colo. App. 354, 46 Pac. 620.)

Actual fraud, or, in other words, dishonest motives need not be shown. (Thompson on Corp., sec. 4493; *Carpenter v. Roberts, supra; Pittsburg v. Dodd, supra.*)

Where there is a community of interest between the "control" of two corporations, or where one corporation is controlling another in its own interest, or where the board of directors of one corporation are violating their duties in the interest of another or refusing to sue or defend as against another corporation because of the joint control, the minority stockholders may sue or defend on behalf of the corporation. (*Weidenfeld v. Sugar Run R. Co.,* 48 Fed. 615; *Fitzgerald v. Fitzgerald,* 41 Neb. 374, 59 N. W. 838; *Barr v. New York etc. Ry. Co.,* 96 N. Y. 444; *Pittsburg etc. Ry. Co. v. Dodd,* 115 Ky. 176, 72 S. W. 823, 74 S. W. 1096.)

A transferee of corporate stock, that is, one who has received the stock after the wrong complained of, does and should have the right to sue on a corporate cause of action where otherwise proper. (Morawetz on Corp., secs. 265, 267; 26 Am. & Eng. Enc. of Law, 9682; Thompson on Corp., secs. 4560-4571; *Chicago v. Cameron,* 22 Ill. App. 91; *Forrester v. Mining Co.,* 21 Mont. 545, 55 Pac. 229, 353; *Parsons v. Joseph,* 92 Ala. 403, 8 So. 788; *Sayles v. Bank,* 18 Misc. Rep. 155, 41 N. Y. Supp. 1063; *O'Connor v. Passenger Co.,* 46 Misc. Rep. 530, 92 N. Y. Supp. 525; *Miller v. Murray,* 17 Colo. 408, 30 Pac. 46.)

There has been no change in the relative position of the
parties, and defendants are not prejudiced because the stock-
holders waited a year or two before commencing suit.   Un-
less the alleged laches cause prejudice to the adverse party
it will not, as a rule, operate as a bar.   (*Hamilton v. Dooley*,
15 Utah, 280, 49 Pac. 769; *Parker v. Bethel Hotel Co.*, 96
Tenn. 252, 34 S. W. 209, 31 L. R. A. 706; *Great West Min.
Co. v. Woodmen of A.*, 12 Colo. 46, 13 Am. St. 204, 20 Pac.
771.)   The corporate books are only presumptive or *prima
facie* evidence of the facts therein stated.   (9 Am. & Eng.
Enc. of Law, 893; *Mudgett v. Horrell*, 33 Cal. 25; *Lane v.
Brainerd*, 30 Conn. 565; *Heintzelman v. Druids' Relief*, 38
Minn. 138, 36 N. W. 100; Thompson on Corp., sec. 7739.)
And it may be shown by parol that a resolution as written
was not the resolution passed by the corporation.   (3 Ency.
of Evidence, 657; *Gilson Gold Min. Co. v. Gilson*, 51 Cal.
341; Thompson on Corp., sec. 7740.)

AILSHIE, J.—This action was instituted by the plain-
tiffs, who held a minority of the stock of the Taylor & Goshen
Canal Company, a corporation existing under the laws of
this state.   The action is prosecuted by such stockholders
for the use and benefit of the corporation, and is for the
collection of a sum alleged to be due the corporation on a
contract entered into by and between the Taylor & Goshen
Canal Company, and the Idaho Canal & Improvement Com-
pany, Ltd., a corporation, both of which corporations are
joined as defendants.   The purpose of this action is to col-
lect for and on behalf of the Taylor & Goshen Canal Com-
pany the sum due under the contract from the Idaho Canal
& Improvement Company.   For convenience, we shall here-
after refer to the former as the "Taylor & Goshen Co.,"
and to the latter as the "Idaho Canal Co."   Judgment was
entered in favor of the plaintiffs for the use and benefit of
the Taylor & Goshen Co., and both the defendant corpora-
tions have appealed.

The defendants demurred to the complaint, both generally
and specially, and their demurrer was overruled.   The ac-
tion of the court in overruling the demurrer is assigned as

error. In order to intelligently consider the sufficiency of the complaint, it is necessary to make a brief statement of the allegations of the complaint and set out some portions thereof in detail. After alleging the corporate existence of the two corporations, it is alleged that the main canal owned and operated by the Idaho Canal Co. runs parallel to the main canal owned and operated by the Taylor & Goshen Co., and that both canals receive their water from the Snake river for the purposes of irrigation, and that the two canals "cover and are available for the same lands," and are competing companies. It is then alleged that the plaintiffs are stockholders in the Taylor & Goshen Co., and have owned their stock at all the times mentioned in the complaint, with the exception of the plaintiff, J. E. Tarr, who acquired his stock subsequent to the transaction involved in the action. It is also alleged that on or about April 1, 1903, the Idaho Canal Co. and the Taylor & Goshen Co. entered into a contract and agreement whereby the latter company rented to the former its canal for the irrigating season of the year 1903, and that the Idaho Canal Co. promised and agreed to keep and maintain the canal in a good and proper condition and to pay on October 1, 1903, the sum of $1,500 to the Taylor & Goshen Co. as rent for the use and benefit of the canal. This is followed by an allegation that the Taylor & Goshen Co. fully and completely complied with its part of the contract, and that the defendant, the Idaho Canal Co., used and operated the Taylor & Goshen Canal and had control of the same for the year 1903, in accordance with the contract and agreement. Paragraphs 7, 8 and 9 of the complaint contain the material allegations entitling plaintiffs, as stockholders, to maintain their action and embody the allegations that are particularly assailed by appellants. These paragraphs are as follows:

"7. That on or about the 13th day of June, 1903, one W. S. Chaney and one J. H. Brady, being at that time owners and in control, by themselves and others representing them, of a majority of the outstanding stock of the defendant corporation, the Idaho Canal and Improvement Company, purchased and caused to be purchased, by themselves and others

representing them, a majority of the outstanding stock of the defendant corporation, the Taylor and Goshen Canal Company, and on said day elected and caused to be elected a majority of the board of directors of the last named company; and ever since said day the said Chaney and Brady are and have been in actual control of each of said corporations.

"8. That at all times since June 13, 1903, the said Chaney and Brady, by themselves and those representing them, have operated and controlled the said defendant, the Taylor and Goshen Canal Company, in their own interests, and in the interests of the said Idaho Canal and Improvement Company, and have disregarded the rights and interests of these minority stockholders; and these plaintiffs allege, upon information and belief, that the control of the said Taylor and Goshen Canal Company was obtained by the said Chaney and Brady for the purpose of preventing competition with the said Idaho Canal and Improvement Company, and making it an adjunct thereto, disregarding the rights and interests of these plaintiffs.

"9. That the said Taylor & Goshen Canal Company, by its board of directors and legally constituted officers, being under the same control as the Idaho Canal and Improvement Company, has failed, neglected and refused to bring action against the last named company for said sum of money, due and owing as aforesaid, and have failed and neglected and refused to insist upon the payment thereof. That these plaintiffs have at various times requested said board of directors and the members thereof to bring action and collect said amount so due, and at all times have endeavored, by every means within their power, to secure action by said corporation on said claim, but said corporation, by its directors and officers, have at all times refused and neglected to do so. That on or about the 1st day of November, 1904, these plaintiffs served and caused to be served upon the board of directors of the said Taylor & Goshen Canal Company, a demand in writing that suit be commenced against the said Idaho Canal and Improvement Company upon said claim; but said board has refused and ever since refuses to

bring said action; and these plaintiffs are compelled to bring said action for the benefit of said Taylor & Goshen Canal Company, in order that they, as minority stockholders therein, may have their rights as such protected."

Rights of Transferee to Sue on Cause of Action Accruing Prior to His Purchase of Stock:

It is insisted by appellants that one who acquires stock subsequent to the commission of the wrongs complained of is not in a position to maintain an action as a minority stockholder for the redress of such wrongs. In support of this contention, appellants cite: *Taylor v. Holmes,* 127 U. S. 489, 8 Sup. Ct. 1192, 32 L. ed. 179; *Bimber v. Calivada Co.,* 110 Fed. 58; *Ulmer v. Maine R. R. Co.,* 93 Me. 324, 45 Atl. 40. This is undoubtedly the rule in the federal courts, but it is a rule that has been adopted for the purpose of preventing a transfer of stock to a nonresident in order to enable him to bring the case in the federal court. It is a rule of practice instead of a principle of law, and is not applicable in the state courts. Equity rule No. 94, adopted by the supreme court of the United States, specifically provides that "every bill brought by one or more stockholders in a corporation against the corporation and other parties founded on rights which may properly be asserted by the corporation, must be verified by oath, and must contain an allegation that the plaintiff was a shareholder at the time of the transaction of which he complains, or that a share had devolved upon him since by operation of law." (Preface to 104 U. S. IX.) The rule prevailing in the majority of the state courts, however, is different, and rests on an entirely different principle.

Mr. Morawetz, in his work on Private Corporations, sec. 265, speaking of this question, says:

"Causes of action belonging to the corporation increase the value of the corporate estate, and must be treated like any other assets; when enforced, they inure to the benefit of all the shareholders without distinction. It is plain, therefore, that a shareholder has an interest in all causes of action belonging to the corporation, whether they arose before or after he purchased his shares. If the courts decline to

protect this interest in any particular case, their refusal must
be based upon some principle of public policy, or the per-
sonal disqualification of the plaintiff.'' And in sec. 266 the
author continues:

''There seems to be no good reason why a shareholder should
not, as a rule, be permitted to sue on account of causes of
action which arose before he purchased his shares, it being
assumed, of course, that the corporation ought to sue, but
is unable to act. If purchasers were disqualified from pro-
tecting their interests under these circumstances, the trans-
ferable value of shares might be impaired, and the loss would
fall upon the innocent holders who were wronged.''

Mr. Thompson, in his work on Corporations, at secs. 4570
and 4571, comments on this rule and adopts the same view
expressed by Morawetz.

The general and prevailing rule in the state courts seems
to be that a stockholder who pleads a good cause of action
may maintain the same, even though he was not an owner
of stock at the time the breach of duty was committed or the
cause of action accrued, except in cases where it is shown
that he purchased the stock with the intent and for the pur-
pose of bringing suit or where his vendor was for some rea-
son estopped from maintaining the action, and the purchaser
had notice of such bar. (Morawetz, sec. 267; *Parsons v.
Joseph,* 92 Ala. 403, 8 So. 788; *Sayles v. Central Nat. Bank,*
18 Misc. Rep. 155, 41 N. Y. Supp. 1063; *O'Connor v. Vir-
ginia etc. Passenger Co.,* 46 Misc. Rep. 530, 92 N. Y. Supp.
525; *Miller v. Murray,* 17 Colo. 408, 30 Pac. 46; *Forrester
v. Boston etc. Min. Co.,* 21 Mont. 545, 55 Pac. 229, 353.)

As said in *O'Connor v. Virginia P. & P. Co., supra,* ''It
is only in cases where the party has bought the stock for
the mere purpose of bringing the action—where he is a mere
interloper seeking for trouble—that a court of equity refuses
to grant him relief.'' The demurrer on that ground was
properly overruled.

### Right of Minority Stockholder to Maintain Action:

Appellants devote a great deal of time to the discussion
of the right of these stockholders to maintain this action.

It is claimed that they have not made a sufficient case by their pleading to authorize a court of equity to permit them to maintain their action on behalf of the corporation. The chief argument is directed to the fact that there is no direct allegation of fraud made against any of the parties to the action. This question merits a very careful consideration. Appellants rely chiefly on the leading case of *Hawes v. Oakland*, 104 U. S. 450, 26 L. ed. 827, wherein the general rule permitting minority stockholders to maintain an action is announced as follows:

"We understand the doctrine to be that, to enable a stockholder in a corporation to sustain, in a court of equity in his own name, a suit founded on a right of action existing in the corporation itself, and in which the corporation itself is the appropriate plaintiff, there must exist as the foundation of the suit:

"Some action or threatened action of the managing board of directors or trustees of the corporation which is beyond the authority conferred on them by their charter or other source of organization;

"Or such a fraudulent transaction, completed or contemplated by the acting managers, in connection with some other party, or among themselves, or with other shareholders as will result in serious injury to the corporation, or to the interests of the other shareholders;

"Or where the board of directors, or a majority of them, are acting for their own interest, in a manner destructive of the corporation itself, or of the rights of the other shareholders;

"Or where the majority of shareholders themselves are oppressively and illegally pursuing a course in the name of the corporation, which is in violation of the rights of the other shareholders, and which can only be restrained by the aid of a court of equity.

"Possibly other cases may arise in which, to prevent irremediable injury, or a total failure of justice, the court would be justified in exercising its powers, but the foregoing may be regarded as an outline of the principles which govern this class of cases."

From among the many cases that have followed the rule above stated, appellants cite the following: *Bimber v. Calivada Co.*, 110 Fed. 58; *Home Fire Ins. Co. v. Barber*, 67 Neb. 644, 108 Am. St. 716, 93 N. W. 1024, 60 L. R. A. 627; *Ulmer v. Maine R. E. Co.*, 93 Me. 324, 45 Atl. 40; *United Electric Co. v. Electric Light Co.*, 68 Fed. 573; *Woods v. Corry Water Co.*, 44 Fed. 146, 12 L. R. A. 168; *Alexander v. Searcy*, 81 Ga. 536, 12 Am. St. 337, 8 S. E. 630.

Before undertaking to apply this rule to the case in hand, we will recall some of the chief reasons which are alleged as grounds for interference by stockholders. The majority of the stock of the Idaho Canal Co. was owned by J. H. Brady, and it is alleged that W. S. Chaney and J. H. Brady were at all times in control of that corporation, the latter being president, while the former was secretary. At the time this contract was entered into between these two corporations, Chaney and Brady were not in control of the Taylor & Goshen Co., but subsequently they acquired a majority of all the stock of that company, and thereafter obtained control of the board of directors, Chaney being elected president and Brady being elected a director. It is also alleged that the two corporations engaged in the sale, rental and distribution of water for irrigation purposes, and owned parallel canals and were competing companies. It is therefore apparent from the pleading that if the Idaho Canal Co., of which Brady was president, and Chaney was secretary, declined to pay this alleged obligation to the Taylor & Goshen Co., of which Chaney was president and Brady a director, and it should become necessary for the latter corporation to sue the former, these two officers would be left in an anomalous position in an action in effect prosecuted by themselves against themselves. They might be ever so honest and conscientious in their transactions with reference to the matter, and yet there would be such an inevitable conflict between duty and opportunity as would justly arouse the interest and anxiety of the minority stockholders, whether any actual fraud or improper motive was either meant or intended. As we have heretofore had occasion to say, "it is the motive which the law imputes to a party, irrespective

of his actual intent'' that must control where an injured party is seeking relief in a court of equity. (*Madden v. Caldwell Land Co., ante,* p. 59, 100 Pac. 360; *California Con. Min. Co. v. Manley,* 10 Ida. 786, 81 Pac. 50.) Regardless of actual fraud, such a state of facts is, in our opinion, sufficient to warrant a court of equity in permitting the minority stockholders to come in and maintain their action and take charge of the litigation. It sometimes occurs in the course of the administration of justice that it is quite as essential to maintain the confidence and respect of litigants in the due and proper administration of justice, as it is that they should recover a few dollars in damages for debt.

The supreme court of New York, in *Brinkerhoff v. Bostwick,* 88 N. Y. 52, in speaking of a case where the same parties had control of the affairs of two corporations, said:

''A suit prosecuted under the direction and control of the very parties against whom the misconduct is alleged, and the recovery is sought, would scarcely afford to the shareholders the remedy to which they are entitled, and the fact that the delinquent parties are still in control of the corporation is of itself sufficient to entitle the shareholders to sue in their own names.''

The case of *Pittsburg C. C. & St. L. Ry. Co. v. Dodd,* 115 Ky. 176, 72 S. W. 822, was a case in most respects very similar to the one under consideration. There a bridge corporation made a lease to a railway company and subsequently the stockholders of the railway company acquired the controlling interest in the stock of the bridge company, and thereafter the railway company ceased to make payments of rent as stipulated by the contract, and the officers of the bridge company also refused to sue the railway company to collect the same. There the railway company was in control of the majority of the stock of the bridge company and was also in control of the board of directors. In discussing and considering the rights of the minority stockholders in the bridge company, the court of appeals of Kentucky held, among other things, as follows:

''But there are admitted exceptions to the general rule that the acts of the directors are the acts of the corporation,

and cannot be interfered with by the courts at the complaint of stockholders, which are as well established, perhaps, as the rule itself. . . . .

"Whether the fraud or breach of trust must involve moral turpitude on the part of the director, the courts do not seem to be of one mind. It is our opinion that it is much the same thing to the corporation whether the wrongful act flows from an improper motive, or from such acts themselves, so wrong in the eyes of the law, that the improper motive that is an ingredient of fraud is imputed to it.

"In the case at bar the holders of the majority of the stock of the bridge company are also owners of a majority of the stock of the Pan Handle Railroad. The same votes elect the board of directors or managers of each corporation. They select the same persons to fill these places in each board. If there is a misunderstanding between the two corporations, it must be solved substantially by one and the same set of representatives, constituting complainants, defendants, and triers of the fact. The reason of the rule making the judgment of the directors that of the corporation depends in a large part upon their having been selected by the stockholders as their representatives, or proxy, in that matter; that their wills being free, as would be the principals', expediency favored the recognition of their act as that of the principals, the stockholders. But where the directors cannot act, and where every presumption founded in reason and ascribed by the law to their acts is resolved at once into a doubt, the reason of the rule fails, and the rule itself must cease. The directors need not be dishonest. It is enough if their situation is such that by reason of conflict of interest they cannot or should not act. . . . .

"We go no further than to say that upon an allegation of fraud on the part of his directors, or upon an allegation of facts showing that the directors (who are also directors of another contracting corporation), because of conflict of interest and duty, could not or ought not to act in the matter, coupled with the further allegation showing material damage to the complaining stockholder by reason of the transaction between the two corporations, a court of equity will hear

a single stockholder's complaint, and if the charges be sustained by the proof, will grant appropriate relief.''

The complaint stated a cause of action and sufficient facts justifying the minority stockholders in maintaining this action.

### Laches and Lack of Diligence:

The appellants further contend that the complaint fails to show that the respondents have acted with diligence, and that, on the contrary, no reason being given for the delay, the complaint upon its face shows the respondents guilty of laches and negligence in prosecuting their action. Appellants cite a great many authorities in which it has in effect been held ''that, independently of any statute of limitations, courts of equity uniformly decline to assist a person who has slept upon his rights and shows no excuse for his laches in asserting them. . . . . Laches and negligence are always discountenanced, and therefore, from the beginning of this jurisdiction there was always a limitation to suits in equity.''

This statement of the rule is supported by the following authorities: *Spidel v. Henrici*, 120 U. S. 377, 7 Sup. Ct. 610, 30 L. ed. 718; *Insurance Co. v. Austin*, 168 U. S. 685, 18 Sup. Ct. 223, 42 L. ed. 626; *Galliher v. Caldwell*, 145 U. S. 368, 371, 372, 373, 12 Sup. Ct. 873, 36 L. ed. 738; *Chezum v. McBride*, 21 Wash. 558, 58 Pac. 1067; *Mullen's Admr. v. Carper*, 37 W. Va. 215, 16 S. E. 527; *Parker v. Dacres*, 130 U. S. 43, 9 Sup. Ct. 433, 32 L. ed. 848; *Richards v. Mackall*, 124 U. S. 183, 8 Sup. Ct. 437, 31 L. ed. 396; *Horr v. French*, 99 Iowa, 73, 68 N. W. 581; *Bryant v. Groves*, 42 W. Va. 10, 24 S. E. 605; *Williard v. Wood*, 164 U. S. 502, 17 Sup. Ct. 176, 41 L. ed. 531; *Sullivan v. Railway Co.*, 94 U. S. 806, 24 L. ed. 324; *Landsdale v. Smith*, 106 U. S. 391, 1 Sup. Ct. 350, 27 L. ed. 219; *Whitney v. Fox*, 166 U. S. 637, 17 Sup. Ct. 713, 41 L. ed. 1145; *Abraham v. Ordway*, 158 U. S. 416, 15 Sup. Ct. 894, 39 L. ed. 1036; *Foster v. Mansfield etc. Ry. Co.*, 146 U. S. 88, 13 Sup. Ct. 28, 36 L. ed. 899.

There is no doubt but that the rule contended for by appellants is the general rule adopted in courts of equity. It has been recognized and followed in this court. (*Idaho*

*G. M. Co. v. Union Min. Co.,* 5 Ida. 121, 47 Pac. 95; *Ryan v. Woodin,* 9 Ida. 525, 75 Pac. 261.) As we understand the rule, however, it has this exception, that it is not invoked or applied by the courts in cases where it manifestly appears that its application is not essential in order to protect the adverse party from being placed in a worse condition by reason of the delay than he would have been in had the action been prosecuted with greater diligence. This exception is very clearly stated in *Parker v. Bethel Hotel Co.,* 96 Tenn. 252, 31 L. R. A. 706, 34 S. W. 209, wherein the supreme court of Tennessee said:

"The doctrine rests upon the broadest principle of equity. Lapse of time obscures all human evidence, and often makes it impossible to discover the truth. When the chances of discovering the truth are greatly impaired by lapse of time, it would be obviously unjust to enforce a demand after many years of acquiescence and delay. And so, where a party has done something, or had spent money, or altered his situation, in the belief, generated by the delay and acquiescence of his adversary, that he had the right so to act, a court of equity will not interfere. But delay alone, unaccompanied by other circumstances, will not necessarily preclude relief. In every case where the defense is founded on mere delay, that delay, of course, not amounting to a bar of any statute of limitations, the validity of that defense must be tested upon purely equitable principles. . . . . The doctrine of laches, as understood in courts of equity, implies injury to the party pleading it as a defense. Where the situation of the parties has not been altered, and one has not been put in a worse condition by the delay of the other, the defense of laches does not generally apply."

In *Hamilton v. Dooly,* 15 Utah, 280, 49 Pac. 769, the court said:

"When the assertion of a right is neglected or omitted for a period of time more or less great, and under such circumstances as to cause prejudice to the adverse party, it may operate as a bar in equity. Although an important ingredient in the law of laches, the instances seem to be rare where courts have declared that mere lapse of time

might effect a positive bar, even in cases of purely equitable jurisdiction; while, on the other hand, relief has frequently been granted, notwithstanding great delay, when substantial justice could yet be done between the parties. . . . . When, therefore, the parties remain in the same relative position, and the delay has worked no serious wrong to the adverse party, so that justice can still be done, the claimant should not be refused relief on the ground of laches.''

No reason whatever appears in this case for applying to the respondents the doctrine of laches. Here, as shown by the complaint, the debt was not due until October 1, 1903. The complaint was filed by respondents, the minority stockholders, on January 31, 1906. It was just two years and four months from the date on which the cause of action accrued until this action was commenced. The complaint shows that in the meanwhile respondents were requesting and demanding that the board of directors proceed to collect the alleged indebtedness. They were evidently, judging from the complaint, diligent in making demands on the board of directors and insisting that they collect the debt or bring suit. The Idaho Canal Co. has no right to complain because it has in no way changed its position or altered its relation either to plaintiffs or their corporation on account of any delay by the stockholders of the Taylor & Goshen Co. in instituting their action. The claim was not barred by the statute of limitations and would not have been for nearly three years after the commencement of this action. It would, indeed, take an extreme case, where the action is on contract for the collection of a debt, to apply the doctrine of laches to minority stockholders where their action is commenced at a time prior to the bar of the statute of limitations. The demurrer to the complaint was properly overruled.

### Parol Evidence to Contradict Minutes of Corporation:

As has been previously observed, this was an action on contract for the collection of a debt. The defendants admitted the execution of the contract and pleaded rescission of the contract as a defense. In support of the allegations of the answer, · the defendants introduced the minutes of

a stockholders' meeting and also of a directors' meeting held on June 13, 1903. That portion of the minutes of the stockholders' meeting bearing on the question involved in this action is as follows:

"Minutes of a special meeting of the stockholders of the Taylor & Goshen Canal Company held at Goshen on Saturday, June 13, 1903, a majority of the stock in said company being represented. On motion Mr. A. M. Neilson was elected to act as temporary chairman and Heber Arave was elected to act as temporary secretary. . . . . On motion two tellers were appointed to canvass the votes on the directors and after the canvass was duly made, the following named stockholders were duly elected for the unexpired term: James Just, J. H. Brady, W. S. Chaney, Robert Hayes and John Clark. Mr. Carrier called up the matter of leasing by the board of directors of this company to the Idaho Canal & Improvement Company all of its water in this company's canal for the season of 1903, for $1500, and on motion by Mr. Carrier and seconded by Mr. William Rogers, it was ordered that the action of the said board of directors be declared null and void, which motion was duly carried. There being no further business to come before the stockholders' meeting at this time, said meeting was duly adjourned. Heber Arave by V. R. Pugmire."

The portion of the minutes of the directors' meeting bearing on this subject is as follows:

"Directors' meeting of the Taylor & Goshen Canal Company, held on Saturday, June 13, immediately following the stockholders' meeting. Present: John Clark, James Just and W. S. Chaney. On motion Mr. Chaney was elected temporary chairman and James Just temporary secretary. . . . .

"The matter of the leasing of the waters of this company for the season of 1903 for $1500 to the Idaho Canal & Improvement Company came up for consideration.

"The stockholders having declared such lease null and void, after discussion, the following motion was made and unanimously carried:

" 'Resolved that the contract between this company and the Idaho Canal & Improvement Company for the leasing of all the waters of this company for 1903, be declared null and void and of no effect and that the said contract be not entered into.'

"There being no further business before the meeting of the board of directors, on motion of Mr. Clark, said meeting was duly adjourned.

"JAMES JUST,

"By V. R. PUGMIRE, Secy."

It will be noted that the minutes of the stockholders' meeting is signed, "Heber Arave, by V. R. Pugmire," while the minutes of the directors' meeting held on the same day, is signed, "James Just, by V. R. Pugmire, Secy." Pugmire was not the secretary at either one of these meetings, and, in fact, does not appear to have been present at either of the meetings. He was elected secretary of the corporation at the directors' meeting held on June 13. He testified that he did not take the notes of that meeting, and did not of his own knowledge know what action was taken at either of the meetings. These minutes were not entered on the corporation books until November 15, 1903, which was nearly a month after the water rental was to become due under the contract between the two corporations. Pugmire also testified that he received these minutes in typewritten form from Chaney with Just's and Arave's names, respectively, signed thereto in typewriting. Chaney, on the other hand, testified that he took shorthand notes of the two meetings, and that he thereafter had his notes extended by a typewriter and delivered a copy to Pugmire, the corporation secretary. He also testified that these were correct minutes of the transactions of the two meetings, respectively. The plaintiffs assailed these minutes and claimed that they were not the true minutes of the meetings, and offered, and were allowed by the court, to introduce both oral and written evidence contradicting them.

Arave, who acted as secretary of the stockholders' meeting, testified that he took the minutes of the proceedings of that

meeting and reduced them to writing at the time, and produced them in court, and they were admitted in evidence. The portions relating to this transaction are as follows:

"June, Sat., 13, 1903.

"The stockholders of the Taylor & Goshen Canal Company met in annual meeting June 13, 1903, Mr. A. M. Neilson was elected chairman and Heber Arave was elected secretary. . . . . James Just, W. S. ᴗhaney, J. H. Brady, John T. Clark, Robert Hayes were elected directors of the company by ballot. It was moved by Mr. Carrier and seconded by Mr. William Rogers, that the action of the board be condemned as unfair and unjust for leasing stockholders' water. Voted and carried. T. E. Wood, R. Hoff, James Just, Robert Hayes, Charley Benton, W. S. Chaney, John Clark, J. H. Brady, A. Wadsworth, John Stoddard."

Just, who acted as secretary of the directors' meeting, testified that three directors were present at the meeting on June 13th, namely, Chaney, Clark and Just. He does not appear to have produced in court the minutes made by him at the time of the meeting, but he testified positively that the portion of the minutes as produced by the defendant purporting to be signed by himself, "By V. R. Pugmire, Secy." was not correct, and that certain matters therein set forth were never mentioned in the meeting, and no resolution was ever passed concerning the same. That part of the minutes produced by defendants and disputed and repudiated by Mr. Just is the part reading as follows:

"The matter of the leasing of the waters of the company for the season of 1903 for $1,500 to the Idaho Canal and Improvement Company came up for consideration. The stockholders having declared such lease null and void, after discussion the following motion was made and unanimously carried: 'Resolved that the contract between this company and the Idaho Canal and Improvement Company for the leasing of all of the waters of this company for 1903 be declared null and void and of no effect, and that the said contract be not entered into."

Now, the contention made by appellants is that it was error in the trial court to permit oral evidence to dispute

the minutes of the corporation as appearing in the corporation books produced on the trial by the defendants, and that it was also error to admit in evidence the minutes of the stockholders' meeting made by Arave. Appellants contend that since, under the provisions of sec. 2775 of the Rev. Codes of Idaho, all corporations for profit are required to keep a record of all their business transactions and a journal of all meetings of their directors and stockholders, such records therefore become the best evidence of the transactions and proceedings of both stockholders' and directors' meetings. This is undoubtedly correct as a general statement of the rule, and was considered and adopted in *Corcoran v. Sonora Min. Co.*, 8 Ida. 651, 71 Pac. 127. The rule as to the minute-book of directors' meetings being proper evidence to prove corporate acts is announced and adopted by a long line of authorities. The cases, however, holding that such records are conclusive evidence of the things therein recorded come within an exception to the rule instead of the rule itself. (6 Thompson on Corporations, secs. 7739, 7740.) The general rule is that they are only *prima facie* evidence of the facts and occurrences therein recorded. Where strangers and innocent third parties have acted on the faith of and belief in the statements contained in the records and minutes of a corporation, the corporation itself has generally been estopped to question or deny the correctness of such records. The rule that the record is conclusive has never been applied to strangers to the record, and we see no good reason for its application in a case of this kind to minority stockholders. 'More especially is this true where they absolutely deny that any such transactions ever occurred, and that the true minutes of a given meeting show the very contrary of that shown by the corporation books.

Mr. Thompson, in Vol. 6 of his work on Corporations, sec. 7740, says:

"The general rule is believed to be that, except for the purpose of proving *what the corporation did,* or what action its corporators took in *effecting its organization,* its books and records are not evidence as against a stranger, or as against a stockholder holding adversely to it. It is believed

that ·a little careful reflection will make clear the proper distinction which obtains in this relation.  They are evidence, in any form of proceedings and against any party, for the purpose of showing that the corporation passed the vote recited, adopted the resolution recorded, or enacted the by-laws spread out upon its minutes,—whenever, under the frame of the issues, it becomes material or relevant to show that fact, and always subject to contradiction, by proving that the record is a false one.  But where it is sought to introduce such records for the purpose of disposing of the rights of strangers to the corporation, or even of its own members in their private dealings with it, or where they hold adversely to it, then those records cannot be so used, because the law ascribes no such force to them."

In *Gilson Quartz Min. Co. v. Gilson,* 51 Cal. 341, it was held that the corporation may introduce parol evidence to show that a resolution of its board of directors spread upon the minutes of its proceedings does not express correctly the proposition that was voted by the board.

In *Holden v. Hoyt,* 134 Mass. 184, the court, in considering the admissibility and ·weight to be given books and records of corporations, said:

"We have no doubt that the books and records of a corporation are *prima facie* evidence against it, as admissions; and, under some circumstances, may be conclusive evidence. But, at most, a corporation can only be bound conclusively by its records,· either when they are the records, duly made by the recording officer, and its proceedings, or when some person, who has had proper access to them has become aware of their contents, and has acted upon the faith that they were the records of its proceedings.  And a corporation is not bound, as to third persons, by interpolations fraudulently inserted in its records, where such third persons have not acted on, or seen, or known of the existence of the matters so interpolated and appearing to be recorded.  It is not estopped or bound by such fraudulent addition, unless it is shown to have been negligent in omitting to make due correction of the records, and that some innocent third person has been misled thereby."

To our minds this is as clear and concise a statement of the rule and its exceptions as we have found. This statement of the law covers the case at bar. While the plaintiffs were trying to recover on the contract sued upon for the use and benefit of the corporation, it was by force of circumstances obliged to make that very corporation a defendant in the case, because the real defendant, Idaho Canal Company, through its stockholders, officers and directors, had control of the Taylor & Goshen Company. And whatever action the directors of the Taylor & Goshen Company might take with reference to this litigation and the circumstances out of which it arises would necessarily be the will of the stockholders and directors of the Idaho Canal Company. The president of the Taylor & Goshen Company was secretary of the Idaho Canal Company, while the president of the latter was a director in the former, and in connection with its president had control of its board of directors. The same two men were in absolute control of both corporations. Under such circumstances one company could easily suffer to the profit and advancement of the other. This was a case of showing that the minutes produced by the defendants were not only false, but that they were not the minutes as taken at the meeting and did not correctly state what occurred. It has been suggested on the argument that the plaintiff in the lower court did not object to the introduction of these records by the defendants. We do not think this contention is well taken in this court. The plaintiffs did, at the time these records were offered by defendants, specifically reserve the right to cross-examine the secretary regarding them, and, following that reservation, did examine the secretary and elicited from him the fact that he did not know anything about the correctness of the minutes, and that he had received the typewritten copies from Chaney, the president of the Taylor & Goshen Company, and had entered them accordingly. Following upon the evidence thus elicited, the plaintiffs, on rebuttal, offered and were allowed to introduce the evidence hereinbefore mentioned tending to prove the incorrectness and falsity of these records. We are satisfied there was no error committed by the court in

permitting this proof, and that the question of the genuineness and correctness of the minutes of these meetings was a proper question to be submitted to the jury.

### Instructions:

The appellants complain of instructions 4 to 9, inclusively, given by the court. These instructions all related to the defense of rescission of the contract interposed by defendants. Some of them, if taken separately, would be open to objection. Some of them, standing alone, we think would be too favorable to the plaintiffs, while at least two of them, taken separate and alone, were too favorable to defendants. As we have repeatedly said, however, the instructions given in a particular case must all be read and viewed together. The court cannot give all the law of a case in one sentence. The entire instructions must be taken together, and if not in conflict with each other, and when read as a whole, correctly state the law in so far as they go, it will not constitute a ground of reversal because a particular sentence or paragraph thereof, when standing alone, is obscure, incomplete or indefinite. It should be further observed in this case that the appellants did not request any instructions on the question of rescission and did not offer any more complete, concise or accurate statement of the law than was given by the court. We find no error in the instructions as a whole.

### Cross-examination of Witnesses:

Appellants complain of the action of the court in denying them the right to cross-examine witnesses Larson, Just, Carrier and Hansen with reference to certain matters. The question propounded to one witness was with reference to his understanding as to whether the contract had been annulled; of another witness if these minutes introduced by defendants had not been used in another action prosecuted against defendant Idaho Canal Co., and that the plaintiffs had notice of their contents long prior to the commencement of this action. The other matters were equally as unimportant. There would have been no error or impropriety,

in allowing the witnesses to answer these questions. This is especially true with reference to witnesses who are themselves parties to the action, as two of these witnesses were plaintiffs in this case. A wide latitude should be allowed in the cross-examination of parties to the action. The questions, however, were not material, and the action of the court in sustaining objections to them was certainly not erroneous or prejudicial to appellants.

### Sufficiency of Evidence:

From what has heretofore been stated with reference to the pleadings and evidence in the case, it will at once appear that the evidence tending to establish or refute the allegations of the pleadings was properly submitted to the jury. There was evidence produced which tended to establish the contention made by the plaintiffs, and there was likewise evidence produced which tended to establish the position maintained by the defendants. It has been contended that no showing was made by the plaintiffs on the trial of this case that the defendant, Idaho Canal Company, ever received the benefits of this contract. There was a sufficient showing on that point to justify a recovery. It appears that an employee of the Idaho Canal Company took charge of the canal belonging to the Taylor & Goshen Company and distributed the water during the season of 1903. It also appears that the water represented by the majority of the stockholders and controlled by Chaney and Brady was under their direction diverted into the canal owned by the Idaho Canal Company, and all the other water that was not used by either the permission of the officers of the Idaho Canal Company or through force by certain of the stockholders of the Taylor & Goshen Company, was also diverted into the canal of the Idaho Canal Company. The fact that the Idaho Canal Company permitted some individual stockholders in the Taylor & Goshen Company to use water from that canal without charging or collecting any rent was not sufficient to defeat the right of recovery of the Taylor & Goshen Company on the contract, or defeat the minority stockholders who are maintaining this action on that contract.

There was, in our opinion, sufficient evidence to support the verdict of the jury in favor of the plaintiffs. Under the uniform rule established by this court with reference to conflicting evidence, and likewise reinforced by positive statute (sec. 4824, Rev. Codes), we are prohibited from reversing a judgment in a case where there is substantial evidence to support the verdict of a jury.

The judgment must be affirmed, and it is so ordered, with costs in favor of respondents.

Sullivan, C. J., and Stewart, J., concur.